Warden. Ms. Wright for the appellant, Mr. Smith for the appellant. Good morning, may it please the Court. Good morning. Good morning. Lisa Wright representing Mr. Waters. I'd like to reserve two minutes for rebuttal. The D.C. Court of Appeals' rejection of Mr. Waters' pro se claim of ineffective assistance of appellate counsel was unreasonable application of federal law where his counsel failed to raise a meritorious sufficiency challenge to the AWIC knife count and the aggravated assault knife count based on the government's failure to negate self-defense beyond a reasonable doubt as to those counts. This was a winning legal claim where under the government's own evidence, no reasonable juror could find beyond a reasonable doubt that at the time of the stabbing, Mr. Waters had not withdrawn from the conflict with Hargrove, did not reasonably fear serious bodily injury necessitating the use of deadly force, and had used deadly force. What standard of review do we use on this particular claim? Well, as in Payne, the Court said that questions of law in these matters are decided in novo. So I would say it's a pure legal question that this Court can decide on its own. The sufficiency questions are just there, yes or no, pure legal questions. But, so we don't, as far as reviewing the district court here, what standard of review do we rely upon? It's de novo, and then as far as the district court's review and our review of the D.C. Court of Appeals, to the extent that they have passed on this issue, what do we do? Well, as to the district court, again, the district court's findings, legal findings would be reviewed de novo, and factual findings would be reviewed under the looser standard. But here the district court didn't reach this question, so there isn't really a standard of review in that sense. So it's more a question of this Court looking at, was it reasonable for the D.C.C.A., was it a reasonable application of federal law to deny recall of the mandate when this was an obviously winning claim, and therefore under Strickland, ineffective assistance was established as a matter of law. Okay. So, but nonetheless, the issue of sufficiency, of course we look at the evidence in the light most favorable to the government, right? Yes. And while there was some evidence of withdrawal, I mean sufficient that the trial judge gave the instruction, wasn't there evidence, including from your client, that was inconsistent with the self-defense claim? No, and it doesn't, the two scenarios that were presented were, you know, mutually exclusive, and Mr. Waters denied having used a knife at all. The charge was AWIC knife. So the jury clearly had rejected that argument. There was no discussion of a knife by Waters at all. So the only evidence about a knife was from Hargrove, and Hargrove's testimony clearly necessarily created a reasonable doubt in the mind of a jury about withdrawal, since he himself openly acknowledged that that was communicated to him by Mr. Waters, that he ran like a coward, he didn't want to face me, he was not trying to fight. Mr. Hargrove was open about that, but he decided that because he had been killed, he believed he was going to, in retribution, kill Mr. Waters and the others, and... Where's the withdrawal here? Pardon? Where's the withdrawal here? The withdrawal is... To make this something other than a continuous attack? Yes, it's a withdrawal because he, there's the moment, the break and the disengagement. How much time? It was a short period of time. How much time? It's 30 seconds, right? Sure, yes, yes. That's withdrawal? That's an interruption? No reasonable juror could disagree with that? That's the standard you have to show, that no reasonable juror could come to any other conclusion other than that that was a withdrawal? Well, given that the victim... Is there a single case that you can cite to in the history of that that would be unreasonable for a juror to say withdrawal did not occur here? No, there's not a factual case exactly on point, but I think Mr. Hargrove testified 100% that he did withdraw, that he... Yeah, but he withdrew because, I mean, in addition to Judge Griffith's question, Waters was retreating from an attack by the man he tried to kill, right? Yes. That's what Hargrove testified. The rage came over me and I wanted to kill Lewis for what he had just done to me. So how could it possibly be that someone's right to self-defense is restored when he's trying to escape from an attack by the man he just tried to kill? Well, he testified that was not... I just don't know that. Pardon? It doesn't make any difference what he testified, does it? Well, why does it make any difference? Because he testified that he was not trying to defend himself at that point at all, that the game had switched up at that point, that they had stood up. There'd been this moment of shock and disengagement when they were both on the floor and Mr. Hargrove... My question's more fundamental than that. If someone is escaping from an attack by the person he just tried to kill, how can that be a retreat that restores the right to self-defense? I think that's a common scenario where someone... Yeah, it's very common and it's hard for me to see how under that circumstance the right... I mean, if you'd gone away for a couple of hours, perhaps, but when it's instantaneous like this and he's trying to escape an attack from the man he tried to kill, it just seems to me that a jury, no reasonable jury, would accept that. Well, the whole premise of this area of law, this withdrawal area, is that the aggressor, that it's changed up, that you can withdraw even though you were the aggressor. And the timing factor, I think, is less important than what the standard says is that you have to take actions or words indicating an intent to withdraw. And that was clearly done and effectively communicated. There was really no... Viewing the government's evidence in the light most favorable, Mr. Hargrove received the withdrawal message from Mr. Waters. So how could a reasonable jury not have a doubt about that? By the way, I just have a question. So Waters' conviction was as a co-conspirator, right? Yes. He didn't have the knife. Or aiding and abetting. Either way, yeah. Does that have any significance for this issue? In other words, since it's a conspiracy, do all three have to withdraw or any one to have the right to self-defense restored? Well, I think the self-defense, just as it excuses the aider in a better liability or justifies the aider in a better liability, also would justify or excuse the co-conspirator in a better liability. And, you know, alternatively... Because the other two, the other one had not retreated, in fact, right? Well, Hargrove's testimony was they were just standing against the wall. And it was not until Mr. Waters called for help, which was not during the retreat or withdrawal. It was not until after he had retreated that he then summoned them for help. And that's when they necessary because he has a defense to this co-conspirator liability. And also, you know, although it's unclear how this was in furtherance of conspiracy at this point to steal. So there was no evidence that he was trying to disarm him. There was no evidence he was trying to disarm him. He essentially was blowing himself up, too. You know, he's not defending himself against Mr. Waters or the others. He's essentially accepting his death and almost hastening it by his actions and on purpose. His only purpose being his desire to kill Waters. And given this, no reasonable juror could be convinced beyond a reasonable doubt that he did not adequately withdraw. And a rational juror wouldn't necessarily find him restored. Couldn't a rational juror have thought that he ran to the utility room for strategic purposes, maybe to get another weapon or a tool or something? If that's possible, if that's possible, then you'd lose on that argument. Well, I think the victim's perception, that's the government's evidence in the light most favorable, is that that's not what it was. I don't know where the juror would get that from when the witness testified as to what his thinking was. And that was not his thinking. Could you just tell me, just in terms of the record, so looking at Murphy, the D.C. Court of Appeals case, the aggressor must communicate his intent to withdraw. And what's the evidence of that? Just point to it. Waters communicated his intent to withdraw. Yeah. Well, it was the running into the utility room, trying to hide from him with a look of fear on his face. And essentially, we know he communicated it because the message was received. It's an unusual case. I mean, normally the victim is not saying, yes, he tried to withdraw. I mean, that is the government's evidence that he tried to withdraw. Likewise, the government's own evidence supports a valid exercise of the right to self-defense once it is restored because it failed to negate Mr. Waters' actual and reasonable fear of imminent serious bodily injury. Again, he had the look of fear on his face in light of Hargrove's understandable rage. Hargrove admitted his goal was to kill the defendant. My mind was still focused on trying to kill Lewis. If I could just break his head across the boiler gas line, I could blow the whole house up. Mr. Hargrove recognized, I mean, excuse me, Mr. Waters recognized that Hargrove was trying to kill him and said so explicitly. So there's really no doubt there because he doesn't just say, help me, help me. He says, he's trying to kill me, he's trying to kill me. So that shows his subjective belief as to the danger he was in and that fear was reasonable. He was pinned and he was being essentially tossed like a rag doll by this enraged hand-to-hand combat expert who characterized himself as a trained assassin. And so under those circumstances, no rational juror could think that Mr. Waters' fear was unreasonable beyond a reasonable doubt. And finally, the government failed to establish that the force that he used was the belief of the defendant who said he's trying to kill me. There was not an escalation here of the violence since there was already a lethal battle going on. And self-defense permits the use of, quote, reasonable force to repel the perceived attack. And that's Parker. Parker explains excessive force very well. Twenty-seven stabs were necessary to defend himself? By definition, they were not sufficient to repel the attack. And it's also the subjective determination in the heat of the moment, in a calm mind, what's reasonable to the mind in the moment might not be as reasonable to the calm mind, but the mind of the defendant subjectively is what matters. And in fact, I mean, even objectively, it was not enough because Mr. Hargrove testified that he was numb, he was basically adrenalized and enraged and numb to these lacerations he was receiving, and that he only ceased his attack once this other object was used against him, which is not the conduct at issue here, this blunt object. And he also agreed that as the moment that he stopped fighting, stopped trying to kill Mr. Waters, that they immediately stopped. So again, you have to have a reasonable doubt whether that's excessive. And you don't look at, you know, whether there's something else under Ewell, the Ewell case, you don't consider what else a defendant might have done, and it's only excessive if it's completely disproportionate and it's an escalation of force, which it was not here. So given all that, the government, you know, presented insufficient evidence to negate the withdrawal or to establish the conduct underlying Counts 3 and 6 on manager excessive force, and there was therefore no reasonable basis for the DCCA to deny Mr. Waters' counsel was ineffective in not raising the sufficiency claim, and Mr. Waters is entitled to habeas relief. Thank you. Thank you. May it please the Court, Peter Smith on behalf of the United States. The DC Court of Appeals reasonably rejected appellant's claim of ineffective assistance of appellate counsel. It was reasonable for counsel to forego the withdrawal claim that appellant is raising on appeal. It's counsel's responsibility in working on an appeal to winnow out the issues. This was not a meritorious issue, and it was counsel reasonably chose not to make this argument. First of all, defendant's own testimony contradicted appellant's withdrawal theory. Appellant testified that he was tussling with the victim, Aaron Hargrove, and that Hargrove never banged appellant's head on anything. In addition, this was best understood as one continuous episode where Hargrove and appellant were struggling, and appellant retreated briefly into the one or two and a half hour break in the proceeding, a disengagement between the parties, and here you do not have that. You have basically one continuous episode, and you have the close temporal time and the close proximity of the combatants during this time period, so you don't have the withdrawal that you do in these other cases. So, I'm trying to understand how you believe that we should interpret the law. Suppose the facts were instead of going into the utility room, Waters and the other two co-defendants walked towards the exit, and as Waters was about to reach the exit, you know, 30 seconds later, Hargrove rushed him and attacked him. Same result? That's not withdrawal? I think you'd have the same result in that case, Your Honor, because you don't have unambiguous withdrawal. In Peterson, for example, the first aggressor said that he was leaving, got in a car, tried to drive away, and that constituted withdrawal, and in your hypothetical, although walking to the exit is more like withdrawal, you know, and if appellant and his co-defendants had run out of the exit and were gone for some period of time, you may well have withdrawal, but in that circumstance where it's such a brief period of time and the withdrawal is not unambiguous, you wouldn't have withdrawal. And here, of course, the facts are even more clear because appellant himself testified that the two were struggling the whole time, although Hargrove testified that appellant backed up into the utility room. The facts are that the shooting occurred in the hallway right in front of the utility room. Appellant is backing up in a very brief period of time, a very short distance, and then the struggle ensues inside the utility room. So you don't have the facts that you have in these other cases where there has been withdrawal, and I'm not aware of any case where a court has found withdrawal when someone is merely backing up a short distance, and appellant hasn't cited any such case. What do you say to Ms. Wright's argument that Hargrove knew, that withdrawal was communicated to Hargrove, and that that's what he thought had taken place? I don't think so. I think that, you know, this court in sufficiency review and looking at Strickland and whether it was reasonable for counsel to not have raised this argument has to look at the whole record. That includes appellant's testimony that the two were struggling the whole time, although Hargrove testified that appellant's act was cowardly in retreating into the utility room. That didn't mean that appellant had withdrawn. For example, it didn't indicate, he didn't say anything about renouncing or surrendering or giving up the fight. He didn't, his co-defendants were still standing right there. What about Ms. Wright's argument that, yeah, he didn't say it, but it was obvious from his behavior and his facial expressions and what Hargrove understood that that's exactly what was communicated? I don't think it would have been obvious in that short period of time, in that close proximity where appellant testified that the two were scuffling the entire time. You agree that communicate doesn't mean he has to actually say it. No, that's correct, but again, courts that haven't relied on direct communication, meaning a comment like, you know, I'm leaving or I'm surrendering or I'm not trying to rob you anymore, you don't have that here. In the absence of that, where courts have found withdrawal, there's been this break in time of an hour, two and a half hours, like in Rory. Well, that's because those were the facts in those cases. That doesn't mean there isn't withdrawal in this case also. Those cases, none of those cases said that, those cases didn't say that less time would have produced a different result. They didn't, but I haven't, I'm not aware of any case again that would find it in this close period of time. We have lots of cases like that where there's no case precisely in point and we have to figure out where the line is. Yeah, but then you have the fact that they're struggling, you have the fact that the co-defendants are standing right by and the co-defendants are armed at the time that appellant called out to his co-defendant to stab the victim, which is inconsistent with the withdrawal. Well, it's not unlikely that someone, the aggressor could still well be armed, right, and still withdraw. Couldn't he? They could, I guess, if they said so or there was a gap in time, but I guess this case would be a lot more like Dorsey where the original defendant, the first aggressor is armed, the defendant is uninjured, and in that case the D.C. Court of Appeals found that the use of deadly force wasn't justified, that the defendant in that case hadn't been restored to his right of self-defense because he, in part because he was armed and he was attacking an unarmed victim. So I guess all of those things together would be the facts that would show that despite that one aspect of Hargrove's testimony that you don't have withdrawal, and this Court has to look at the entire record and it has to look at that record in the light most favorable to the government on sufficiency review, and then there's another layer on top of that that I guess goes to Judge Wilkins' earlier question for appellant's counsel, that this Court is looking at whether it was reasonable for counsel, appellate counsel, to forego this argument, and so you're looking at the sufficiency standard, you're looking at appellant counsel's strategic decision given the closeness of this, the fact that the parties are arguing about what the facts even are. Isn't there yet another layer, and that's under AEDPA? Wouldn't we have to come to the conclusion that the D.C. Court of Appeals was not just wrong but unreasonably wrong? That's correct. I mean, I guess that's the first level of review is the statutory level, which is that this Court has to find that the lower court was, the state court was unreasonable. And then we get to Strickland. Right. And then on top of that we have the sufficiency of the evidence. Right. So, you know, we're sort of burrowing down now deep into the facts, but I guess my point is that the fact that the parties are arguing about the facts just illustrates that counsel made a reasonable strategic decision in not raising this claim for the reasons that I articulated earlier. If there are no further questions, we would urge the Court to affirm the judgment of the D.C. Court of Appeals. Thank you. Thank you. How much time did Ms. Wright have left? Ms. Wright did not have any time. Oh. You can have a minute if you'd like. I would just like to say, just because the case is that withdrawal has been found after longer breaks doesn't mean a shorter break cannot be withdrawal. And this case is highly unusual. It short-circuits the whole question of the temporal break by having the victim, the government's own evidence, jumps to the ultimate question and acknowledges the ultimate question in our favor. And, you know, there's no reason to require some extended period because the law wants to encourage fights to end and wants immediate withdrawal as a good thing that you don't want to encourage victims, you know, the non-aggressor to continue once the person withdraws. And as to whether this is a strategic decision, it cannot be a strategic decision to, when a question of law is involved and there's a yes or no answer and it's meritorious, which this Court can find de novo, there can be no possible strategic reason not to raise it when it takes 17 years off the defendant's sentence. There's no downside at all. And, likewise, it would be, by definition, unreasonable for the DCCA to not find infectiveness in that circumstances because there is just a pure question of law. So we would ask the Court to grant Mr. Waters his habeas jury. Thank you. Thank you. The case is submitted.
judges: Tatel, Griffith, Wilkins